IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LAURIE A. DEUSCHEL,

      Plaintiff,                                                  CIV S-03-2072 GEB GGH

      vs.

MICHAEL J. ASTRUE,                              <u>FINDINGS & RECOMMENDATIONS</u>
Commissioner of Social Security,

      Defendant.

_____/

*Introduction and Summary*

        Not often are the procedures and processes involved in a case more complicated than the underlying substantive issues. However, this is a Social Security case involving a plaintiff previously found to be too disabled to work who seemingly performed more work than not during her periods of disability entitlement. As a result, plaintiff was overpaid. She then embarked upon a marathon of due process in order to keep her benefits, and have the amount of the overpayment withheld by SSA repaid.

        Proceeding pro se, plaintiff brought this action to not only stave off overpayment collection/retention by the Commissioner, but also for damages and injunctive relief on a plethora of issues only marginally related to the overpayment. In the sections that follow, the

undersigned will completely describe the procedures and process of this case both in the district court and the Social Security Administration. The substantive result stemming from this history is that, under the law, the overpayment was correctly found and not forgiven. Judgment should be awarded to the Commissioner.

*Procedural and Background History*

Plaintiff filed for disability benefits in 1996, and was awarded such benefits with an eligibility effective date of September 1995. Finding that she could nevertheless work despite her finding of total disability, plaintiff engaged in work which caught the attention of SSA in 1998. Plaintiff should have previously reported her work, but did not. The overpayment was computed by permitting benefits during a 9 month trial work period commencing with the month in which plaintiff engaged in substantial gainful activity, and then calculating an overpayment for every month thereafter for a 36 month "reentitlement period" in which plaintiff engaged in substantial gainful activity. See 20 C.F.R. § 404.1592a. The precise calculation methodology is not important here in that plaintiff does not contest herein in any meaningful fashion the fact of the initial overpayment – $13, 848.30.[1]

Plaintiff filed a request for waiver of overpayment. The precise administrative chronology of this initial request is not important except to note that plaintiff was not ultimately given the opportunity for a hearing into the overpayment waiver request, and that by the time plaintiff filed her action in district court in late 2003, most of the overpayment had been collected out of benefits owed to plaintiff on account of her on-again-off-again disability status, or through interception of other government benefits due to her. At the time of filing this action, only

\\\\\

---

[1] Indeed, plaintiff knew that she was being overpaid as she began to return disability checks. Of course, in a payments system as large as Social Security, and despite plaintiff's alleged oral explanation to Administration employees, the system seemingly had no idea why some checks were being returned and evidently presumed that they should just be reissued as errantly returned checks. A large lump sum was sent to plaintiff who then cashed the large check.

$1,143.50 remained unpaid. [2]

Plaintiff's action in district court was a scatter gun attempt to sue SSA on account of the collection attempts in which she included civil rights claims, contract claims, and violation of bankruptcy law claims. In the June 10, 2004 Findings and Recommendations disposing of the Commissioner's motion to dismiss, the undersigned found that plaintiff had not been afforded a proper hearing on her request to have the overpayment waived. Thus, "[t]his action should be construed as and proceed as a claim against defendant [Commissioner] in her official capacity on plaintiff's constitutional challenge to the administration's actions in determining and recouping the overpayment of benefits and failing to waive overpayment. All other claims and all other defendants should be dismissed." F & Rs at page 13. These Findings and Recommendations were adopted in the Order of July 19, 2004 in which the Honorable Garland E. Burrell, Jr. added:

> The case shall proceed as a civil action. The court is concerned by plaintiff's allegations that the Commissioner never determined the merits of her request for reconsideration and waiver of overpayments. Accordingly, the Commissioner is directed to show cause within 30 days after the filed date of this order why she should not be ordered to refund to plaintiff the amount of any overpayment until such time as the Commissioner or the court can render a decision on the merits of plaintiff's claims, including her request for reconsideration and waiver of overpayments.

After some delay, the order to show cause was discharged by the undersigned, and a determination was made that this case would not proceed pending adjudication of the request for waiver of overpayment by the Commissioner. Periodic status reports were required with the court growing increasingly concerned with the reasons why the administrative proceedings were taking so long.

\\\\\

---

[2] Plaintiff even filed for bankruptcy during this period, and it is confusing, but ultimately irrelevant, why the overpayment issue was not part of the bankruptcy proceeding. Suffice it to say that SSA did not cease its overpayment collection payments during this period. As noted in the Findings and Recommendations dated June 10, 2004, and later adopted by the district judge, the undersigned found that the bankruptcy court had ruled that SSA did not violate the automatic stay.

The administrative record now before the court demonstrates those reasons. Plaintiff had continued her sometimes work efforts after the first overpayment; the SSA found plaintiff not to be eligible for disability benefits, then reinstating her, then terminating her, then plaintiff filing for new benefits. During this period in which the Commissioner was attempting to determine whether to waive the initial overpayment, *another* overpayment in the amount of $25,779.80 was computed. These matters were finally sorted out in the Appeals Council's November 29, 2007 decision (Tr. 18-24) which granted the requests for review of the ALJ's August 4, 2006 and March 23, 2007 decisions, and issued the final agency decision.

1. The claimant completed her nine-month trial work period in December 1997 (Exhibit 12, p4).
2. The claimant's 36-month extended period of disability commenced with January 1998 (Exhibit 12, p.5 and B-9).
3. The claimant did not demonstrate an ability to engage in substantial gainful activity in December 2002, after the expiration of the extended period of eligibility in December 2000 (Exhibits B-9 and AC-5, p.3-11).
4. The claimant received an overpayment of $13,848 in disability insurance benefits for the following months......
5. The claimants' disability did *not* end effective December 2002 due to her ability to engage in substantial gainful activity.....
6. The claimant did *not* receive an overpayment for January 2003 through December 2004 due to the cessation of her period of disability and/or entitlement to disability insurance benefits.
7. The claimant was not without fault in causing the overpayment of $13,848 for April 1998 through February 2000 and recovery thereof is not waived.

(Tr. 23) (emphasis added)

The Appeals Council ordered that monies recouped from plaintiff in an amount greater than the first overpayment ($13,848) be repaid to plaintiff. Id. Plaintiff indicated after this final administrative decision that she wished to contest the final decision of the

1  Commissioner.  By direction of the court, plaintiff filed an amended complaint on March 19,
2  2008.  However, with the exception of arguments about the alleged erroneous failure of the
3  Commissioner to waive her first overpayment, the issues raised by the amended complaint either
4  repeated the dismissed allegations of the pre-remand complaint, or contested moot issues
5  regarding the later repudiated finding of the second overpayment.
6          Plaintiff filed her motion for summary judgment on October 3, 2008.  The
7  Commissioner filed his cross-motion on December 16, 2008.  Plaintiff filed a reply to the cross-
8  motion on January 8, 2009, and also an improperly filed opposition to the cross-motion on
9  January 15, 2009.

*Issues*

Plaintiff's summary judgment motion does not reveal in any depth the issues on which plaintiff requests judgment.  Rather, the stated issues are a conglomeration of bald assertions without reference to record evidence, or whether any alleged deprivation in due process during the second round of administrative processes actually harmed the process, or whether the issues were resolved previously.  Nevertheless, the undersigned will address each and every headlined issue raised by plaintiff in her motion for summary judgment.  See p. 27 of Plaintiff's Motion for Summary Judgment.  The commissioner does not address all of these, but argues that substantial evidence supports the refusal to waive plaintiff's first overpayment, and that the administrative proceedings on remand did not lack in due process.[3]

*Discussion*

The undersigned does not try the issues in this case de novo.  Rather, the test here is whether substantial evidence supported the decision of the Commissioner not to waive the overpayment.  McCarthy v. Apfel, 221 F. 3d 1119, 1125 (9th Cir. 2000).

\\\\\

---

[3] The undersigned will not look to oppositions or replies to ferret out new issues for which the Commissioner had no notice in plaintiff's motion for summary judgment.

1. <u>Violation of Due Process When the Commissioner Recouped the 1998-2000 Overpayment Before Processing the Waiver Request</u>

To the extent that plaintiff seeks damages in her complaint for constitutional torts, based on her alleged lack of pre-deprivation due process, the Supreme Court has held that such damages actions are not sustainable. <u>Schweiker v. Chillicky</u>, 487 U.S. 412, 108 S. Ct. 2460 (1988). To the extent that plaintiff is seeking some type of injunctive relief, that was the point of the first remand in this case, i.e., give to plaintiff the process to which she was due. The court order of December 14, 2004, determined that the administrative process would go forward with respect to a hearing on waiver of overpayment without requiring any pre-hearing recoupment directive. There is nothing left to adjudicate or order on this pre-remand claim as plaintiff has been given the hearing ordered.[4]

2. <u>Did the Commissioner Properly Process Plaintiff's Request for Waiver of Overpayment/Change in Repayment Rate Prior To Recoupment of Benefits</u>

The undersigned does not recognize any distinction between this issue and the preceding one. Therefore, no further discussion is made here.

3. <u>Did the Commissioner Fail to Follow Its Own Regulations Regarding the Overpayment of 1998-2000</u>

To the extent that plaintiff is again complaining of events which took place prior to the court's remand, there need be no further discussion. To the extent that plaintiff is complaining about the post-remand hearing process, that discussion takes place below.

\\\\\

\\\\\

\\\\\

---

[4] This is not to say that plaintiff did not have a point with respect to her recoup-the-benefits-first-due process-later assertion. However, that point was addressed with the remand ordered by this court in 2004.

4. <u>Did the Commissioner Violate Plaintiff's Right to Due Process When it Combined the Two Requests for Hearing by an Administrative Law Judge?</u>

The undersigned assumes that this issue involves the first overpayment ($13,848) and the second overpayment ($25,648.55). Without explanation, plaintiff argues that the consolidation of these two matters violated due process. However, plaintiff forgets that she received a final, favorable decision from the Commissioner on the second overpayment, i.e., the Appeals Council found, as reported above, that no overpayment occurred, (Tr. 23, finding 6), and that any amounts recouped in excess of the first overpayment were to be refunded to plaintiff. <u>Id</u>. at first full paragraph. Even assuming that plaintiff means that the consolidation was effected without proper notice, and that is what plaintiff is arguing, the issue is moot because plaintiff was not harmed by the administrative addition and later repudiation of the second overpayment.

5. <u>Did the Commissioner Fail to Follow Its Own Regulations?</u>

It appears to the undersigned that this issue is a follow-up to the previous issue. For the reasons stated above, it is moot. The remaining issues will be discussed only in connection with the decision not to waive plaintiff's first ($13,848) overpayment.

6. <u>Did the Commissioner Properly Prepare Plaintiff's Case for Hearing By the Administrative Law Judge?</u>

Plaintiff makes several arguments under this heading. First, she contends that contrary to the Commissioner's own policy, HALLEX I-2-1-35(A), she was not permitted to review the claim file prior to the hearing day. It is difficult to understand precisely what plaintiff is complaining about because the argument section does not reference any of the multitudinous facts set forth by plaintiff in other papers, some including her problems with the second and now moot overpayment. However, if the undersigned has correctly discerned the pertinent complaint, it appears on page 22-23 of the Summary Judgment Motion.

Plaintiff was sent notice of the hearing concerning waiver of the first overpayment. <u>Id</u>. The two sentences of argument referencing this issue appear on page 23: "On

October 18, 2005, the Commissioner failed to prepare a list of exhibits and present that list to plaintiff prior to the hearing time.  The Commissioner presented Plaintiff with what appeared to be her entire claims folder to examine within ten minutes prior to the hearing."

The undersigned finds the presentation of the Commissioner, however, to be without material dispute.  There were post-remand administrative proceedings which prefaced the ultimate administrative hearing on the issue of the first overpayment.  At a personal conference scheduled for September 20, 2004, plaintiff was informed by notice that she could review her entire claims file. (Tr. 172).  Plaintiff appeared on that date, and signed a statement for the record which said: "I do not want a folder review."  "I am requesting a copy of my entire file."  (Tr. 176).  The record reflects a previous waiver of her right to review her file. (Tr. 162 dated August 04).  Prior to her October 2005 administrative hearing, she was specifically informed: "If you want to see your file before the date of the hearing, call this office." (Tr. 269 (contained within the September 9, 2005 notice of hearing).  Plaintiff does not allege that she "called the office" and requested any pre-hearing date review of her file.  Due process does not require that the Social Security Administration make for plaintiff a duplicate copy of her entire claims file, and plaintiff cites no authority for that proposition.

Moreover, plaintiff's claim for lack of due process is disingenuous.  She was fully aware of the facts regarding her alleged overpayment and brought suit concerning those facts in 2003.  She was given an opportunity to review her file and submit before the hearing any additional evidence that she desired to submit. (Tr. 269).  Plaintiff's due process claim is without merit.

Plaintiff also argues without attribution to the record that the "Commissioner failed to produce all documents relevant to the proceedings."  Motion at 34.  However, plaintiff does not in any way identify the allegedly omitted documents, their relevance, or anything about them.  The undersigned does not know to what plaintiff refers and will not guess.  Nor will the undersigned scour the file to determine to what documents plaintiff may be referring.  Plaintiff

has attached no "omitted" documents to her brief.

Finally, plaintiff argues that the Administrative Law Judge "failed to identify and admit plaintiff's exhibits presented during and after the hearing." Again, no identification is made here concerning any exhibits plaintiff might have desire to have admitted. In addition, the record reflects no complaint by plaintiff to the Appeals Council concerning this issue, nor does it reflect a submission of extra exhibits by plaintiff.[5] The transcript of the hearing before the ALJ indeed reflects the opposite, i.e., plaintiff had presented some unidentified documents which the ALJ specifically ordered to be copied for him. (Tr. 375-379). Plaintiff's unsupported argument fails.

7. <u>Did the ALJ Make Prejudicial Statements Against Plaintiff, i.e., Was The ALJ Biased?</u>

Plaintiff correctly argues that the ALJ should be impartial, but does not identify in her motion a single example of impartiality. The transcript of the hearing commencing at (Tr. 364) does not reflects such. Neither do the ALJ's and Appeals Council decisions. Nothing more can be said because plaintiff does not elaborate.

8. <u>Did the Commissioner Apply the Proper Tests for Fault and Waiver?</u>

Plaintiff finally gets to the pertinent assertions that the first overpayment should have been waived. However, aside from explicating cases, plaintiff never applies the theory of such cases to her action. Nevertheless, the court has thoroughly reviewed the decisions at issue and the administrative hearing. For the reasons expressed below, the undersigned finds substantial evidence to support the Commissioner's decision that plaintiff was not without fault in causing the overpayment.

Overpayment to SSI and SSA recipients can be waived. However, the *sine qua non* of waiver is that the recipient be without substantial fault in receiving (or keeping) the overpayment. 42 U.S.C § 404(b); <u>Quinlan v. Sullivan</u>, 916 F.2d 524, 527 (9th Cir. 1990) (tests

---

[5] At Tr. 327, plaintiff indicates to the Appeals Council that she has attached exhibits. The documents that follow do not pertain to the first overpayment at issue here.

for waiver are conjunctive – without fault *and* recovery would defeat the purpose of the program or would be against equity and good conscience). See also McCarthy v. Apfel, 221 F3d 1119, 1126 (9th Cir. 2000).

> The regulations provide that an overpaid individual may be found at fault if the overpayments resulted from: (1) an incorrect statement made by the individual that he knew or should have known to be incorrect; (2) failure to furnish information that he knew or should have known to be material; or (3) acceptance of a payment that he either knew or could have been expected to know was incorrect. See 20 C.F.R. § 404.507. The overpaid individual bears the burden of proving that he was without fault. *See Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir.1990).

McCarthy, 221 F.3d at 1126.[6]

In this case, the Commissioner found plaintiff to be with fault, and never reached the secondary tests. In affirming the decision of the ALJ, the Appeals Council set forth the ALJ reasoning:

> For the *not without fault finding,* the Administrative Law Judge reasoned that, although the claimant did return [some] funds voluntarily, the overpayment resulted from her "failure to promptly notify the Social Security Administration of her return to work on multiple occasions during the period at issue." The Administrative Law Judge observed that the Administrations' standard operating procedure is to explain an individual's reporting responsibilities at the time an application for benefits is filed, and for the individual to accept such responsibilities.

(Tr. 22).

The ALJ also relied on the claimant's previous admissions that she knew she was not due the checks she returned, and had agreed to pay those benefits back. (Tr. 29). What is most persuasive to the undersigned, however, is the claimant's ability to go to work nearly immediately after she had applied, and been awarded, in 1996, disability benefits for not being able to perform *any* substantial gainful activity. Plaintiff's excuse that financial pressures in

---

[6] The Commissioner bears the burden of proof in establishing the overpayment. However, plaintiff does not challenge the bona fides of the $13,848 (1998-2000) overpayment. She does contest the calculation of the later overpayment, but as observed above, the Appeals Council ultimately found no overpayment.

1996 "forced" her back to work is unappealing.  Millions of Americans are "forced" to work to live.  The fact remains that plaintiff, at least for substantial time periods, was able to work despite any claimed disabilities.  Plaintiff must have known, and she produces no evidence to the contrary to meet her burden, that working right after she receives disability benefits could not have been permitted, at least not without notifying the Administration about the start of a trial work period.  Although the Social Security Act provides for "trial work periods" in an abundance of generosity and with the knowledge that a person's disability can improve, it is up to plaintiff to report this work *immediately*, and not wait to get caught, or wait to inform the Administration years after the fact of substantial work.

Plaintiff did ultimately suffer pangs of conscience, and started to return some checks uncashed.   She testified that "they" told her that if "they" find  a second trial period appropriate, they would return the money.  (Tr. 372).   Money was returned to plaintiff, without any communication that she was given a second trial work period, and she just assumed that "they" must have so found.  Result – she could now cash a large lump sum check without further communication.

The undersigned has no doubt that the mammoth Social Security Administration can act, at times, inefficiently with one hand not knowing what the other hand is doing.  With all the millions of inputs from SSA/SSI recipients over the country, sometimes miscommunications can occur.  However, a recipient has responsibilities to not carelessly perform actions which are bound to confuse a large bureaucracy, and recipients have some obligation, in the absence of mental infirmities, to know what *their* responsibilities are, and the confusion which will result if they do not meet them.  Plaintiff must have known that substantial work was generally at odds with the rationale of disability benefits, and she should have made the Administration aware of her work at the earliest opportunity so a large overpayment would not occur.  She had a responsibility to do the best she could to know that she was being correctly paid.  Plaintiff has not met her burden of proof with respect to her responsibilities.

The governing statute, 42 U.S.C. § 404(b) does provide that in considering whether to waive an overpayment the Commissioner shall take into account the recipient's "physical, mental, educational, or linguistic limitation." In the body of the decision, the ALJ recounted plaintiff's knowledge that she had been overpaid, and described her work activities which would preclude a legitimate assertion that her limitations precluded her from being aware of her overpayment. These jobs, during her period of disability, include a job where she had to learn Spanish and do payroll. (Tr. 30). It was only at the time of her next "meltdown" did she stop her work. While the undersigned is not aware of plaintiff's precise disability, and plaintiff does not assert that she lacks the basic intellectual acuity to understand the principles behind the disability program requirements, the jobs she was able to perform do not allow a finding of sufficient limitations. Certainly, plaintiff has the ability to communicate rationally with this court.

In sum, plaintiff has not shown that she was without [substantial] fault. This being the case, there is no need to review the second equitable criteria for waiver of overpayments.

9. Does the Commissioner Expect Plaintiff to Understand the Social Security Act?

Plaintiff's argumentative assertion has been addressed above, and no more need be said.

*Conclusion*

Plaintiff's Motion for Summary Judgment (Docket# 57) should be denied; the Commissioner's Cross-Motion for Summary Judgment (Docket # 68) should be granted, and judgment awarded to the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections
2  shall be served and filed within ten days after service of the objections. The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
5  Dated: July 28, 2009

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

deuschel.fr